UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE #: 0:24-cv-60552-DSL

JASON JORDON,

    Plaintiff,

vs.

CITY OF SUNRISE,

    Defendant.
_____/

**DEFENDANT, CITY OF SUNRISE'S, STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, CITY OF SUNRISE ("City"), by and through its undersigned counsel, and pursuant to Local Rule 56.1(a), files this statement of undisputed material facts in support of its motion for summary judgment as follows:

1. Plaintiff, Jason Jordon ("Plaintiff"), is a Black City firefighter who was demoted from rescue lieutenant to firefighter in December 2023. [DE 25] at ¶¶ 1, 25.

2. Chief John McNamara ("Chief McNamara") possesses final decisionmaking authority regarding all employment and personnel decisions rendered in the City's Fire Department, including the subject decision at issue in this case to demote Plaintiff from rescue lieutenant to firefighter in December 2023. Exhibit 1, J. McNamara Declaration at ¶ 4.

3.     As a rescue lieutenant, Plaintiff held a supervisory role, which included mentoring and training probationary firefighters new to the City's Fire Department. Exhibit 1, J. McNamara Declaration at ¶ 6.

4.     Chief McNamara expects all employees in the City's Fire Department (especially those in supervisory and leadership roles like Plaintiff held) to act professionally, cordially, and appropriately at all times towards each other and their subordinates. Exhibit 1, J. McNamara Declaration at ¶ 7.

5.     In September 2023, two female probationary firefighters under Plaintiff's supervision, Marcia LaSanta (LaSanta), a Hispanic female, and Morganne Marshall (Marshall), a Black female, raised concerns through their chain of command regarding Plaintiff's inappropriate language, statements, and behavior directed towards them. Exhibit 1, J. McNamara Declaration at ¶ 8; Exhibit 2, M. LaSanta Declaration at ¶¶ 4-6; Exhibit 3, M. Marshall Declaration at ¶¶4-6; Exhibit 4, Captain Hodge letter to Battalion Chief Martin; Exhibit 5, Battalion Chief Martin Notes; Exhibit 6, Marshall Statement to Martin.

6.     Both LaSanta and Marshall alleged that Plaintiff engaged in conduct towards them of a racial and sexual nature. Exhibit 1, J. McNamara Declaration at ¶ 9; Exhibit 2, M. LaSanta Declaration at ¶ 6; Exhibit 3, M. Marshall Declaration at ¶ 6; Exhibit 4, Captain Hodge letter to Battalion Chief Martin; Exhibit 5, Battalion Chief Martin Notes.

7.     Upon learning of the complaints from LaSanta and Marshall, the City promptly initiated an investigation via Notice dated September 21, 2023, in which Plaintiff was advised that he was under investigation for possible

violations of Fire Department and City work rules and policies. Exhibit 1, J. McNamara Declaration at ¶ 10; Exhibit 7, September 21, 2023, Notice of Formal Investigation.

8. As part of the Formal Investigation process, the City interviewed all associated parties, including Plaintiff, LaSanta, and Marshall. Exhibit 1, J. McNamara Declaration at ¶ 11; Exhibit 2, M. LaSanta Declaration at ¶ 7; Exhibit 3, M. Marshall Declaration at ¶ 7; Exhibit 8, Overview Notes from Interrogations.

9. LaSanta alleged that Plaintiff told her in one of their first conversations that "…people like you and me have to stick together…," from which LaSanta understood to mean that Plaintiff was referring to the fact that both of them were minorities within the fire rescue profession and so the two of them therefore had to "look out" for each other. Exhibit 1, J. McNamara Declaration at ¶ 12; Exhibit 2, M. LaSanta Declaration at ¶ 8.

10. LaSanta told Plaintiff that she was not raised in that manner as she believes everyone should be treated equally and fairly, regardless of race and gender. At that moment, LaSanta felt that Plaintiff was beginning to treat her differently. Exhibit 2, M. LaSanta Declaration at ¶ 8.

11. LaSanta reported that on more than one occasion Plaintiff made inappropriate comments to her about her work performance in front of other employees and patients, and she explained how she additionally learned that Plaintiff was "bad mouthing" her to Marshall. Exhibit 1, J. McNamara Declaration at ¶ 13; Exhibit 2, M. LaSanta Declaration at ¶ 9.

12. LaSanta felt like Plaintiff was often looking for a way to criticize her and undermine her performance, and she believed Plaintiff seemed to get upset with her for various little things she would do during her shifts. Exhibit 2, M. LaSanta Declaration at ¶ 9.

13. LaSanta described an unpleasant incident at the station where Plaintiff asked her whether she wore underwear at work after Plaintiff folded the crew's uniforms but did not locate LaSanta's underwear. Exhibit 1, J. McNamara Declaration at ¶ 14; Exhibit 2, M. LaSanta Declaration at ¶ 10.

14. During her next shift, a male firefighter, Trevor Wezkiewicz, approached LaSanta and said that Plaintiff mentioned to him that she did not wear underwear at work. LaSanta had no idea why Plaintiff would try to discuss her underwear with her or anyone else in the workplace, and this inappropriate conduct made LaSanta feel very uncomfortable. Exhibit 2, M. LaSanta Declaration at ¶¶ 10-11.

15. LaSanta further described an incident involving a "work out session," in which Plaintiff told her to begin the exercise by stating "you lead it off since you got that big booty of yours…" Exhibit 1, J. McNamara Declaration at ¶ 15; Exhibit 2, M. LaSanta Declaration at ¶ 12.

16. LaSanta found this particular sexual comment to be inappropriate and did not welcome it. Exhibit 2, M. LaSanta Declaration at ¶ 12.

17. Marshall overheard this sexual comment at the gym as well and found it to be inappropriate. Exhibit 3, Marshall Declaration at ¶ 12.

18. LaSanta reported that Plaintiff asked her about her shower habits and whether she used her hands, a washcloth, or a lufu to clean her body. Exhibit 1, J. McNamara Declaration at ¶ 16; Exhibit 2, M. LaSanta Declaration at ¶ 13.

19. Plaintiff told LaSanta "people are different" and that he "wanted to see what other people do…" regarding their shower habits, and LaSanta found this sexual comment to be inappropriate and otherwise did not welcome it. Exhibit 2, M. LaSanta Declaration at ¶ 13.

20. Plaintiff admitted that he asked LaSanta about her shower habits. Exhibit 12, J. Jordon Depo at 40: 8-24.

21. Marshall reported that Plaintiff told her "you're a Black female in the fire service, I have much higher expectations for you and at the end of the day, I will have your back a little more than I will for other people…" Exhibit 1, J. McNamara Declaration at ¶ 17; Exhibit 3, M. Marshall Declaration at ¶ 8.

22. Marshall found this comment to be inappropriate as she believes everyone should be treated equally and fairly, regardless of race and gender. Exhibit 3, M. Marshall Declaration at ¶ 8.

23. Marshall also reported that Plaintiff spoke negatively about LaSanta to her and expressed his expectations for Marshall juxtaposed in a way that spoke negatively about LaSanta's work performance. Exhibit 1, J. McNamara Declaration at ¶ 18; Exhibit 3, M. Marshall Declaration at ¶ 9.

24. Plaintiff additionally told Marshall that the probationary firefighters should have a "probie [probationary] competition" and that Marshall should "find

something that LaSanta is really bad at and we will have a competition." Exhibit 3, M. Marshall Declaration at ¶ 9.

25. Marshall described how Plaintiff provided multiple examples of things he did not like about LaSanta to her and how she believed that Plaintiff was potentially treating LaSanta differently than her based on race. Marshall felt like Plaintiff's comments and comparisons between her and LaSanta were inappropriate. Exhibit 3, M. Marshall Declaration at ¶ 10.

26. Marshall further reported a conversation with Plaintiff regarding "...running calls at night and leaving [his] shoes out by the bedroom doors..." During this conversation, Marshall reported that Plaintiff told her "...if you do not see my shoes and I'm not at the truck... I have a 'pee-boner' and I'm handling that..." Exhibit 1, J. McNamara Declaration at ¶ 19; Exhibit 3, M. Marshall Declaration at ¶ 11.

27. Marshall found this sexual comment, which was also overheard by Trevor Wezkiewicz, to be inappropriate and she did not welcome it. Exhibit 3, M. Marshall Declaration at ¶ 11.

28. During the City's investigation, Plaintiff explicitly admitted to the "pee-boner" discussion with Marshall and the "laundry underwear" incident with LaSanta. Regarding the "pee-boner" discussion, Plaintiff stated "I did say that, 100%, much like a TMI...too much information right, as far as... poor joke that was clearly not funny or well received..." Exhibit 1, J. McNamara Declaration at ¶ 21; Exhibit 11, December 13, 2023, Memorandum.

29. Plaintiff likewise admitted in his deposition that he talked about a "pee boner" to Marshall and acknowledges that his "pee boner" comment was inappropriate. Exhibit 12, J. Jordon Depo at 40: 25; 41: 1-23; 46: 5-12

30. Plaintiff told Marshall that she "will never be as strong as him" given that she was a woman. Plaintiff followed up by stating "so let's work on that" and told Marshall that if she ever wanted to work out with him to text him before their next scheduled shift. Exhibit 3, M. Marshall Declaration at ¶ 13.

31. Plaintiff further proceeded to ask Marshall about other women in her hiring class and inquired who was "stronger" and "better." Exhibit 3, M. Marshall Declaration at ¶ 13.

32. Marshall found these gender-based comments to be inappropriate and she did not welcome them. Exhibit 3, M. Marshall Declaration at ¶ 13.

33. Plaintiff directly supervised LaSanta and Marshall during the time he engaged in this inappropriate conduct, and both of them found Plaintiff's conduct, behavior, and statements to be inappropriate and unwelcome as a whole. Exhibit 2, M. LaSanta Declaration at ¶ 14; Exhibit 3, M. Marshall Declaration at ¶ 14.

34. Neither LaSanta nor Marshall ever considered Plaintiff's comments and conduct directed towards them to be a joke. They were probationary employees new to the department and did not have any relationship with Plaintiff or anyone else in the department where those types of comments could be deemed subjectively or objectively appropriate. Exhibit 2, M. LaSanta Declaration at ¶ 15; Exhibit 3, M. Marshall Declaration at ¶ 15.

35. On October 2, 2023, the City provided Plaintiff with a Notice of Predetermination Hearing and Potential Disciplinary Action, through which Plaintiff was advised that a pre-determination hearing was scheduled for October 5, 2023, and that Plaintiff had the opportunity to address, explain, and/or rebut the allegations of misconduct made against him at the pre-determination hearing. Exhibit 1, J. McNamara Declaration at ¶ 20; Exhibit 9, October 2, 2023, Notice of Pre-determination Hearing; Exhibit 10, Predetermination Hearing Notes.

36. Plaintiff attempted to refute the majority of the other events and/or conversations with the two female probationary firefighters, and was fixated on whether there were "witnesses" to each event. Plaintiff admitted to the incidents where he knew someone else other than LaSanta and/or Marshall witnessed the event or statement and attempted to excuse some of his conduct by stating that some of the incidents were "taken out of context." Exhibit 1, J. McNamara Declaration at ¶ 22; Exhibit 11, December 13, 2023, Memorandum; Exhibit 12, J. Jordon Depo at 37: 18-25; 38: 1-7.

37. At all material times throughout the City's investigation, Plaintiff had union representation. Exhibit 12, J. Jordon Depo at 36: 10-25; 37:1-5; 49: 6-18.

38. Overall, Chief McNamara found Plaintiff's explanations, rebuttals, and responses to be self-serving, devoid of genuine merit, and contradictory to other statements provided during the investigation as a whole. Exhibit 1, J. McNamara Declaration at ¶ 23; Exhibit 11, December 13, 2023, Memorandum.

39. As a rescue lieutenant, Plaintiff held a position that required supervisory and leadership skills. Plaintiff was tasked with ensuring that Fire Department policies were adhered to by all employees including himself. Exhibit 1, J. McNamara Declaration at ¶ 24; Exhibit 11, December 13, 2023, Memorandum; Exhibit 12, J. Jordon Depo at 46: 13-23.

40. Chief McNamara found Plaintiff's conduct to be unacceptable and far below the standards expected of any firefighter (let alone a supervising rescue lieutenant) and felt that Plaintiff failed to set a good example for the firefighters in the department. Exhibit 1, J. McNamara Declaration at ¶ 25; Exhibit 11, December 13, 2023, Memorandum.

41. Following Plaintiff's October 5, 2023, pre-determination hearing, and based upon the evidence and information gathered during the investigation, Chief McNamara concluded that Plaintiff's actions violated fourteen (14) Fire Department and City work rules and policies, which he outlined to Plaintiff within a December 13, 2023, Memorandum. Exhibit 1, J. McNamara Declaration at ¶ 26; Exhibit 11, December 13, 2023, Memorandum.

42. While Plaintiff's termination was initially contemplated, the City never terminated Plaintiff. Instead, rather than terminating Plaintiff (which Chief McNamara could have done as a result of Plaintiff's misconduct), Chief McNamara elected to demote Plaintiff from rescue lieutenant to firefighter, effective December 17, 2023, and allow Plaintiff to remain employed by the City. Exhibit 1, J. McNamara Declaration at ¶ 27; Exhibit 11, December 13, 2023, Memorandum.

43. The decision to demote Plaintiff from rescue lieutenant to firefighter had nothing to do with Plaintiff's race or any other protected trait. Exhibit 1, J. McNamara Declaration at ¶ 28.

44. The decision to demote Plaintiff from rescue lieutenant to firefighter was solely based on the evidence and information gathered as part of the above-described investigation. Exhibit 1, J. McNamara Declaration at ¶ 29.

45. Chief McNamara and the City never once considered Plaintiff's race in connection with the decision to demote Plaintiff from rescue lieutenant to firefighter. Exhibit 1, J. McNamara Declaration at ¶ 30.

46. Chief McNamara and the City never took any improper or discriminatory action against Plaintiff. Exhibit 1, J. McNamara Declaration at ¶ 31.

47. Chief McNamara and the City have never harbored any discriminatory animus against Plaintiff. Exhibit 1, J. McNamara Declaration at ¶ 32.

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 7th day of March 2025, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

BY:   */s/ Christopher J. Stearns*
CHRISTOPHER J. STEARNS
FLA. BAR NO. 557870

*/s/ Jonathan H. Railey*
JONATHAN H. RAILEY
FLA. BAR NO. 111717

JOHNSON, ANSELMO, MURDOCH
BURKE, PIPER & HOCHMAN, P.A.
**Attorneys for Defendant**
2455 East Sunrise Boulevard
Suite 1000
Fort Lauderdale, FL 33304
954/463-0100 Telephone
954/463-2444 Facsimile
Stearns@jambg.com
railey@jambg.com
young@jambg.com
nunez@jambg.com
cisaac@jambg.com

## SERVICE LIST

**WILLIAM R. AMLONG, ESQ.**
The Amlong Firm
**Counsel for Plaintiff**
500 Northeast Fourth St., Suite 101
Fort Lauderdale, Florida 33301-1154
954-462-1983 (Phone)
WRAmlong@TheAmLongFirm.com
EService@TheAmLongFirm.com


**CHRISTOPHER J. STEARNS, ESQ.**
**JONATHAN H. RAILEY, ESQ.**
JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER & HOCHMAN, PA
**Counsel for Defendant**
2455 E. Sunrise Blvd., Suite 1000
Fort Lauderdale, FL 33304
stearns@jambg.com
railey@jambg.com
young@jambg.com
nunez@jambg.com
cisaac@jambg.com